IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


MICHAEL LEVENSON,        )
                                 )
            Plaintiff,    )    Civil Action No. 05-1639
                                 )
     v.                  )    Chief Judge Ambrose
                                 )    Magistrate Judge Caiazza
OXFORD GLOBAL RESOURCES,   )
INC.,                    )
                                 )
            Defendant.    )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

It is respectfully recommended that the Defendant's Motion for Summary Judgment (Doc. 34) be denied regarding the Plaintiff's defamation claim, but granted in all other respects.

### II.  REPORT

**BACKGROUND**

The allegations leading to this case were described in a previous Report and Recommendation, repeated here for the sake of convenience:

> The Plaintiff Michael Levenson is an aerospace engineer who provides consulting services, and the Defendant Oxford Global Resources, Inc. . . . provides other businesses with the services of consultants/experts. . . .
>
> In September 2004, Oxford contacted Mr. Levenson regarding a consulting position it was filling for Alcoa, Inc. . . .

The Plaintiff alleges Oxford represented
to him that, should Alcoa agree to
Mr. Levenson's appointment, he would be paid
at a rate economically equivalent to a
previous agreement [he] had with Alcoa,
or $85.00 per hour, and there would be no
restrictions on [his] prerogative to seek
subsequent employment with Alcoa. . . .

Mr. Levenson interviewed with Alcoa, and the
company informed him that he was accepted for
the position. . . . Contrary to earlier
representations, however, Oxford sent [him] a
contract . . . in which the compensation to
be paid . . . was significantly lower than
initially agreed upon, and [it] included
restrictions on [his] prerogative to seek
other employment with Alcoa. . . .

When the Plaintiff voiced concern,
the Defendant abruptly and without basis in
fact . . . falsely accused [him] of being
belligerent, . . . accused [him] of
unreasonably refusing to provide Oxford with
a [start] date, and inform[ed Mr.] Levenson
that Oxford would no longer deal with him.
. . .

Like Oxford, Alcoa subsequently advised
Mr. Levenson he no longer would be considered
for its consulting positions. . . . Despite
the company's previous[] retention of the
Plaintiff to satisfactory results, Alcoa
allegedly advised Mr. Levenson he was
ineligible based on the information received
from Oxford. . . .

On these facts, the Plaintiff alleges breach
of contract, defamation, misrepresentation,
and interference with existing and/or
prospective contractual relations between
himself and Alcoa. . . .

*See* R&R dated Sept. 1, 2006 (Doc. 25) at 1-2 (citations and

internal quotations omitted), *adopted by Dist. Ct.* on Sept. 21,

2006 (Doc. 26).

Now that discovery has been taken, the court revisits the Plaintiff's various claims.

## ANALYSIS

### A.   Breach of Contract

Contrary to Mr. Levenson's pleadings, there is no competent evidence that Oxford agreed to pay the Plaintiff the equivalent of $85 per hour.  To the contrary, the record reveals that Mr. Levenson agreed to a rate of $65/hour, "[plus or minus] $2-3 (hopefully [plus])."  *See* email from M. Levenson to M. Douglas dated Sept. 8, 2004 (filed under Doc. 37 at pg. 32 of 44).

Upon learning that his potential worksite was Alcoa, Mr. Levenson told his lead recruiter at Oxford, Linda Horn, he had previously worked for the company at the rate of $85/hour:

Q.   And did [Ms.] Horn say anything?

A.   No.  Not in specifics.  Just okay. . . .

. . . .

Q.   Is it your testimony that [Ms.] Horn told you
     that Oxford . . . would pay you $85 an hour?

A.   No.

Q.   Did anyone at Oxford . . . ever tell you that
     they would pay you $85 an hour?

A.   They told me it was possible.

Q.   But they didn't tell you that they would, is
     that correct?

A.   Yes.

*See* Dep. Tr. of M. Levenson (filed under Doc. 37) at 101-102.

Mr. Levenson seeks to mitigate his deposition testimony through a later-filed affidavit, stating among other things:

> [Ms. Horn] asked [whether,] if she were . . . able to get me $75/Hr.[,] would that make it a done deal and I said I would be willing to accept that rate, however, I would like her to submit me at the rate of $85/Hr. and see what Alcoa had to say. Based upon this conversation, it was understood that the acceptable hourly rate was in the range of $75-$85 an hour. Ms. Horne informed me that she would make a good faith effort to obtain the $75-85/Hr. rate as discussed and agreed upon.

*See* Aff. of M. Levenson (Doc. 48) at ¶ 15.

In this Circuit, a litigant cannot "undo" damaging deposition testimony through a later, contradictory affidavit. *See* <u>Baer v. Chase</u>, 392 F.3d 609, 624 (3d Cir. 2004) ("a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict") (citation omitted). The Plaintiff offers no explanation for the discrepancies, and none are apparent from the record. Mr. Levenson's oral testimony defeats his breach of contract claim, and summary judgment is warranted.

Even assuming the contrary, the issue of whether a contract was formed may be resolved on summary judgment where it is "clear that reasonable minds could not possibly differ";

otherwise, "the summary judgment procedure" could "never be used in a case in which a plaintiff alleges [the] existence of a contract" and the employer denies it.  *See* <u>Booth v. McDonnell Douglas Truck Servs., Inc.</u>, 585 A.2d 24, 27 (Pa. Super. 1991) (citations omitted, quotations in original).

Given the totality of the evidence, a jury could not reasonably conclude that the parties had a "meeting of the minds" regarding the Plaintiff's pay rate.  Affording the non-movant every benefit of the doubt, the best Mr. Levenson can establish is that the parties were in negotiations regarding his rate of pay.  *See, e.g.*, Pl.'s Dep. Tr. at 169, 177, 181 (testifying that, when Plaintiff sought to modify written contract terms offered by Oxford, "[he] was still in the negotiation phase"). When Mr. Levenson refused Oxford's proposed rate of $65/hour (an amount, by his own words, he already accepted on September 8, 2004), he rejected the Defendant's offer and no agreement was reached.

For all of these reasons, the Defendant is entitled to summary judgment on the Plaintiff's breach of contract claim.[1]

_____

[1]  To the extent Mr. Levenson's misrepresentation claims survived dismissal under Rule 12(b)(6), they were based on the same allegations as his contract claim.  *See* Sept. 1st R&R at 4.  The recommendations above therefore apply with equal force to misrepresentation. The Plaintiff's opposition papers are silent on the matter, moreover, and this presents an independent ground for granting summary judgment. *See* <u>Evans v. Nine West Group, Inc.</u>, 2002 WL 550477, *4 (E.D. Pa. Apr. 15, 2002) (court may grant summary judgment on unopposed claims as "abandoned") (citations omitted).

**B.   Interference With Existing or Prospective Contractual Relations**

The Plaintiff's interference claim cannot be founded on the Defendant's failure to place him at Alcoa, as the proposed employment contract was between himself and Oxford.  *See* Am. Compl. (Doc. 13) at ¶ 7 *and* Ex. 1 thereto (contract was between Plaintiff and Defendant, and Mr. Levenson "shall be an employee of Oxford").

Nor can the Plaintiff rely on his prior work with Alcoa, which dated back to at least May 2003.  *See* Defs.' Br. (Doc. 36) at 3-4 (citing record evidence).  Contrary to his pleadings, there was no "open 'purchase order' [under which] it was expected . . . that Mr. Levenson would have the same or similar consulting agreements with Alcoa in the future."  *See* Sept. 1st R&R at 6. Furthermore, the law is clear that prospective contractual relations do not flow from "prior dealings or an existing business relationship between the parties."  *See, e.g.*, Binns v. Flaster Greenberg, P.C., 480 F. Supp.2d 773, 780-81 (E.D. Pa. 2007) (citation omitted).

The only other basis for Mr. Levenson's claim comes in his post-deposition affidavit, which states:

> Several hours after [my] telephone interview
> [with Alcoa], I received a call from [the
> company's agent] Clive Copsey.  He inquired
> into my willingness to become an Alcoa
> employee and what my salary expectations in
> regards to a 'permanent' position would be.
> I responded affirmatively and provided him
> with the requested information.

-6-

*See* Pl.'s Aff. at ¶ 19.

Defense counsel objects to this evidence on hearsay grounds. Def.'s Br. at 6 n.3. Hearsay statements may be considered on summary judgment, however, so long as they are capable of admission at trial. *See* Brown v. Muhlenberg Twp., 269 F.3d 205, 212 n.4 (3d Cir. 2001) (hearsay is permissible "if the out-of-court declarant could later present that evidence through direct testimony") (citations and internal quotations omitted). Oxford has not shown Mr. Copsey incapable of testifying at trial, and the hearsay objection is without merit.[2]

Reaching the substance of Mr. Copsey's alleged statements, they cannot help the Plaintiff survive summary judgment. This witness inquired regarding Mr. Levenson's desire to become a permanent employee within the context of his first being placed in a temporary position by Oxford. *See* Pl.'s Aff. at ¶ 19

---

[2] The court is somewhat troubled by the fact that Mr. Copsey's alleged statements appear for the first time in Mr. Levenson's post-deposition affidavit. If this individual was not identified in discovery as a potential witness, Defense counsel may have a valid (and persuasive) "ambush" objection. *See generally* Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc., 2007 WL 781250, *1, *4 (N.D. Ill. Mar. 12, 2007) ("trial by ambush is incompatible" with Rule 26(a)(1)(A), which requires litigants to provide and supplement "the name[s] . . . of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses") (citations and internal quotations omitted). The court cannot determine from the record whether Mr. Copsey was properly identified, but if he was not (and no adequate justification exists), this would end the tortious interference inquiry. *See* discussion *supra* (rejecting other grounds for claim). While summary judgment is warranted on independent grounds, the Defendant may include any colorable "ambush" claims in its objections to this Report, and the Plaintiff may be heard in his response.

(Mr. Copsey allegedly called Plaintiff after telephone interview arranged by Oxford).  There is no evidence to show, or reasonably infer, that Mr. Copsey intended to circumvent the agreement between Alcoa and the Defendant that, if an Oxford candidate was not placed, said candidate would be ineligible to apply on his own.  *See generally* Ex. 18 to Dep. of M. Kulak (filed under Doc. 28 at pg. 52 of 52) (submittal and interview of Oxford applicant was "with the express understanding that the [applicant]'s services will not be engaged, directly or indirectly, other than through Oxford, for a period of six (6) months").

Under the circumstances, Mr. Levenson cannot show that, "but for the wrongful acts of the defendant[,] it [wa]s reasonably probable that a contract would have been entered." Welker v. Mychack, 2006 WL 2663724, *10 (Pa. Comm. Pl. Sept. 12, 2006) (citing and quoting binding appellate authority).  "This is an objective standard [that] must be supplied by adequate proof," *id.*, and the Plaintiff offers none.  *See generally* Pl.'s Opp'n Br.; *see also generally* Pl.'s Dep. Tr. at 150-51 (admitting there is no evidence Plaintiff was later precluded from securing employment with Alcoa).

The Plaintiff has no objective basis for believing it reasonably probable he would have secured future employment with Alcoa.  His tortious interference claim cannot survive summary judgment.

## C. **Defamation**

Mr. Levenson asserts that lead recruiter Ms. Horn published defamatory remarks to Alcoa, most specifically to the company's head of Aerospace Design, Mike Kulak. Although Defense counsel focuses on the handwritten notes of Mr. Kulak taken during the allegedly defamatory discussion, evidence more favorable to the Plaintiff is found in Ms. Horn's deposition.

In explaining the disagreement she had with Mr. Levenson that led to Oxford's withdrawing his application, Ms. Horn stated:

> Q. If Mr. Kulak recorded that that's [not contained in record] . . . what he believes you said to him, would you disagree with that . . . recollection?
>
> A. No, I would not disagree because [Mr. Levenson] was extremely angry. He was extremely rude and unprofessional. . . .
>
> Q. And when you spoke to Mr. Kulak and were giving him the information about that conversation, were you intending to communicate to him your assessment . . . Mr. Levenson had been rude and unprofessional?
>
> A. Yes.
>
> . . . .
>
> Q. What did you mean by [the] statement [that you no longer were interested in representing Mr. Levenson]?
>
> A. Exactly what I said. . . . I had absolutely no interest whatsoever in representing anyone that could not contain themselves and their anger and be a reasonable person . . . .

I would be doing a disservice to my client if
[I] knowingly sent someone to their facility
to work which had demonstrated to me their
inability to remain professional under
stressful circumstances.

. . . .

Q.    Did you . . . tell Mr. Kulak that you felt
. . . Mr. Levenson's conduct was done
intentionally so that he could negotiate with
Alcoa directly rather than through you?

A.    Given that he wanted to completely eliminate
[certain provisions of the proposed] contract
then I would say yes.

*See* Dep. Tr. of L. Horn (filed under Doc. 45-3) at 112, 116, 121.

When asked about his conversation with Ms. Horn, Mr. Kulak

testified:

Q.    Do you think somebody about whom such things
were reported would be a candidate that you
would hire for [the] position . . . ?

. . . .

A.    I personally would not.

Q.    Why not?

A.    [B]ecause we have very good teams that
cooperate and any one individual by himself
could not do a good job working in that
environment unless he [was] a good team
player . . . .   I think anybody in any
industry would look at the dimension[] as
being an important one in most type[s]
of R and D environments[,] where an
individual contributor [must also act] as a
group contributor.

*See* Dep. Tr. of M. Kulak (filed under Doc. 45-3) at 66-68.

The Defendant argues Ms. Horn's statements were capable of
defamatory meaning.  *See* Def.'s Br. at 13-16.  A communication is
defamatory if, among other things, "it ascribes to another
conduct, character or a condition that would adversely affect
that person's fitness for the proper conduct of their business,
trade or profession."  Pellegrino Food Prods. Co., Inc. v. The
Valley Voice, 875 A.2d 1161, 1164 (Pa. Super. 2005) (citation
omitted).  The court "consider[s] what effect the statement would
have on the minds of the average persons among whom the statement
would circulate."  Davis v. Resources for Human Dev., Inc.,
770 A.2d 353, 357 (Pa. Super. 2001) (citations and internal
quotations omitted).  Although defamatory meaning is typically
determined by the court, in close cases it goes to the jury.
*See, e.g.*, Rush v. Philadelphia Newspapers, Inc., 732 A.2d 648,
652 (Pa. Super. 1999) ("if there is an innocent interpretation
and an alternate defamatory interpretation, the issue must
proceed to the jury") (citation omitted); Gordon v. Lancaster
Osteopathic Hosp. Ass'n, Inc., 489 A.2d 1364, 1368 (Pa. Super.
1985) ("[i]f the court has any doubt that the communication is
defamatory, then the issue must be given to the jury . . . to
determine whether the defamatory meaning was understood by the
recipient") (citation omitted).

Superimposed upon these considerations are the Pennsylvania courts' recognition that "statements of opinion, without more, are not actionable." Green v. Mizner, 692 A.2d 169, 174 (Pa. Super. 1997) (citation omitted). If the opinion "can be reasonably understood to imply the existence of undisclosed defamatory facts," however, they are actionable. *Id.*

Viewing Ms. Horn's testimony on the whole, two types of alleged defamatory statements emerge: (1) her comment that Mr. Levenson's behavior was "intentionally" designed to circumvent his agreement with Oxford so he could negotiate directly with Alcoa (a statement through which Ms. Horn arguably insinuated the Plaintiff was dishonest or lacked integrity); and (2) the statements that Mr. levenson was "rude and unprofessional," he could not control his anger, and he "demonstrated [an] inability to remain professional under stressful circumstances." *See* discussion *supra*.

The former category is not actionable, but the latter is.

## 1. **Mr. Levenson's Purported Intent**

In suggesting that the Plaintiff engaged in obstreperous behavior to avoid his putative contract with Oxford, Ms. Horn disclosed the facts upon which she based her conclusion. This is most evident from Mr. Kulak's notes regarding the witnesses' discussion:

> [Ms. Horn had] never dealt with anyone . . .
> changing perspective [regarding the contract]
> in such a short period of time . . .
>
> [She] said that they had discussed everything
> prior and that the only open issue was
> [Mr. Levenson's] starting time[, t]hen he
> wanted to rewrite [the] contract . . . .
>
> [He was] asking for demands that were not
> attain(able) from Oxford's end[,] mainly
> money . . . [and t]aking out the non-compete
> [clause] . . . .
>
> . . . .
>
> 'He did not give us an opportunity to
> negotiate' -- he gave us a long email with
> demands [that] we could not expedite by
> [his deadline] . . . .

*See* transcribed notes of M. Kulak (filed under Doc. 38
at pg. 48 of 52).  It was on these bases that "Linda [Horn] felt
[Mr. Levenson] might be doing this intentionally to be able to
negotiate directly with [Alcoa]."  *Id.*

All of these purported facts, disclosed to the recipient,
supported Ms. Horn's opinion that the Plaintiff was engaging in
intentional conduct.  Plaintiff's counsel has failed to identify,
and the court can predict no other, undisclosed facts necessary
to her opinion.

Ms. Horn's statements regarding intent are non-actionable
opinion, and they cannot support the Plaintiff's defamation claim
on summary judgment or at trial.

**2. The Plaintiff's Rude, Unprofessional Conduct and His Inability to Control His Temper**

As seen above, Ms. Horn's statements were capable of defamatory meaning if they ascribed conduct, character or a condition that would adversely affect the Plaintiff's fitness to engage in his profession. *See* discussion *supra*. Ms. Horn herself testified that the Plaintiff's conduct "demonstrated [his] inability to remain professional under stressful circumstances." *See id*. (emphasis added). The court need not speculate regarding the effects her statements would have on the intended audience; Mr. Kulak was left with the same impression. *See id.* (Alcoa had no interest in person who "could not do a good job working in [its] environment unless he [was] a good team player").

This case is unique, though, in that the alleged disparaging comments did not directly impugn Mr. Levenson's abilities as an engineer. Rather, Ms. Horn and Mr. Kulak questioned his ability to function in a stressful environment and to work as a team player, characteristics the Aloca position undoubtedly required.

Pennsylvania case law is less than clear on the matter. None of the cases cited by opposing counsel present a good "fit" given the specific facts and circumstances in this case.

In Maier v. Maretti, for example, the Plaintiff was attributed with telling her supervisor "you better play ball with me," or she would put his "head through the wringer with [his]

extramarital affair." *Id.*, 671 A.2d 701, 703 (Pa. Super. 1995).
Despite the Plaintiff's claim that this statement impugned her
professional character by implying she was vulgar, crude, grossly
insubordinate, intemperate, and lacked integrity and
self-control, the court found no actionable defamation. *Id.*
at 704-705.

Any analogies to <u>Maier</u> based on Mr. Levenson's purported
lack of self-control would be thin, indeed. The <u>Maier</u>
plaintiff's comments went to her supervisor's personal life,
and therefore supported the court's conclusion that they "did not
concern her abilities to perform her job." *Id.* at 705-706.
In this case, Ms. Horn's statements addressed Mr. Levenson's
professional dealings with Oxford, and they were intended to, and
did, affect Mr. Kulak's impression of the Plaintiff as a
candidate. *Cf. id.* at 705 ("the nature of the audience hearing
the remarks is a critical factor in determining whether the
communication is defamatory") (citations omitted).[3]

The remainder of the Defendant's cases are equally, if not
more, distinguishable on their facts and/or the law applied.
*See* <u>Parano v. O'Connor</u>, 641 A.2d 607, 609 (Pa. Super. 1994)
(court did not conduct business/profession analysis, and found
non-actionable opinion based on disclosed facts); <u>Kryeski v.</u>

---

[3]  The <u>Maier</u> Court also found the purported statements before it
conditionally privileged, an argument rejected in this case below.
*See* discussion *infra*.

<u>Schott Glass Techs., Inc.</u>, 626 A.2d 595, 600-601 (Pa. Super. 1993) (finding alleged statements by one employee to another that appellant was "crazy" not defamatory, in reliance on precedent that such comments are "not meant in the literal sense" and constitute no more than "a vigorous epithet"); <u>Baker v. Lafayette College</u>, 516 Pa. 291 (Pa. 1987) (finding non-actionable opinion based on disclosed facts); <u>Neish v. Beaver Newspapers, Inc.</u>, 581 A.2d 619 (Pa. Super. 1990) (newspaper article case not addressing business/profession analysis); <u>Beckman v. Dunn</u>, 419 A.2d 583 (Pa. Super. 1980) (relying on opinion supported by disclosed facts and conditional privilege).[4]

The Plaintiff's cases are not much more helpful. The bulk of the decisions address comments impugning the plaintiff's honesty or integrity. While these types of allegations receive

_____

[4] The most difficult of the Defendant's cases is the somewhat dated decision in <u>Gordon v. Lancaster Osteopathic</u>. There, the court held that the phrases, "'a vote of no confidence,' 'lack of trust in the reporting ability of [the plaintiff],' 'lack of confidence in [his] work,' and '[his negative] attitude and performance over the past several years'" did not "impute a charge of incompetency or unfitness." <u>Id.</u>, 489 A.2d at 1369 (citations omitted). The court went on to say that the comments "state[d] no more than in the most general terms that [the defendants], speaking for their departments, lacked confidence in [the plaintiff's] professional ability and could not recommend that his contract be renewed"; and "the only reasonable interpretation of these [comments] is that they [we]re expressions of [non-actionable] opinion[]."

<u>Gordon</u> is both distinguishable and inconsistent with current Pennsylvania law. It is distinguishable because, here, Ms. Horn's statements regarding the Plaintiff's unprofessional conduct were not made in "most general terms" and in connection with the plaintiff's job performance. <u>See id.</u> The decision is inconsistent with Pennsylvania law, moreover, in that the court's opinion analysis took no account of whether the statements "impl[ied] the existence of undisclosed defamatory facts." For these reasons, the District Court should find the Defendant's citation to <u>Gordon</u> unpersuasive.

heightened attention,[5] Mr. Levenson's "lack of integrity"

evidence has been rejected as non-actionable opinion.  *Compare*

discussion *supra* (Ms. Horn's suggestion that Plaintiff engaged in

intentional misconduct was based on disclosed facts and therefore

non-actionable) *with* <u>Tucker v. Merek & Co.</u>, 2002 U.S. Dist. LEXIS

23062, *13 (E.D. Pa. Dec. 2, 2002) (plaintiff labeled "deceptive

and untrustworthy"); <u>Sprague v. ABA</u>, 2001 WL 1450606, *1 (E.D.

Pa. Nov. 14, 2001) (lawyer described with term that "can connote

illegal activity"); <u>Synygy, Inc. v. Scott-Levin, Inc.</u>, 51 F.

Supp.2d 570, 580 (E.D. Pa. 1999) (statements implied dishonesty),

*aff'd*, 229 F.3d 1139 (3d Cir. Jul. 14, 2000) (table); <u>Avins v.</u>

<u>White</u>, 627 F.2d 637, 644 (3d Cir. 1980) (accusations of

misrepresentation); <u>Aronson v. Creditrust Corp.</u>, 7 F. Supp.2d

589, 592-93 (W.D. Pa. 1998) (plaintiff unwilling

to pay his debts).

The Plaintiff's remaining Pennsylvania precedent consists of

a hoary decision containing little analysis, a decision involving

a much more defamatory utterance, and one where the alleged

statement went directly to the heart of the plaintiff's

profession.  *See* <u>Miller v. Hubbard</u>, 207 A.2d 913 (Pa. Super.

1965) (dated decision, with little analysis, indicating that

recipient's testimony at trial she perceived plaintiff as being

---

[5]  *See, e.g.*, <u>Phillips v. Selig</u>, 2001 WL 1807951, *5 (Pa. Comm. Pls. Sept. 19, 2001) ("accusations of dishonesty . . . and other similar improper or unethical activities" qualify as defamatory).

"unreliable" supported defamation claim); <u>Synthes (U.S.A.) v. Globus Med., Inc.</u>, 2005 WL 2233441, *2, *4 (E.D. Pa. Sept. 14, 2005) (statements that plaintiff was "dangerous" and "would never be able to service [a] hospital again" capable of defamatory meaning); <u>Resnick v. Manfredy</u>, 52 F. Supp.2d 462, 470 (E.D. Pa. 1999) (attorney/sports agent deemed "an ineffective negotiator").

As just seen, Mr. Levenson's evidence does not fit neatly into the cases cited by either party. The Plaintiff here has presented evidence that his purported anger management issues and argumentativeness rendered him unable to work in a stressful environment and as a team player. *See* discussions *supra*. The precedent coming closest indicates that summary judgment should be denied. *See, e.g.*, <u>Agriss v. Roadway Express, Inc.</u>, 483 A.2d 456 (Pa. Super. 1984) (citing with approval case finding it "defamatory for plaintiff's employer to publish charge plaintiff was argumentative, irritable, and insecure") (citation omitted); <u>Weyrich v. New Republic, Inc.</u>, 235 F.3d 617, 628 (D.C. Cir. 2001) (statements regarding plaintiff-politician's "volatile temper and apparent emotional instability" could lead reasonable person to conclude he was "unfit for his trade or profession"); <u>Eslami v. Global One Commc'ns, Inc.</u>, 1999 WL 51864, *5 (Va. Cir. Ct. Jan. 11, 1999) (statements that plaintiff "did not fit in" and "lost his temper" could threaten his ability to act in management position "requir[ing] significant interpersonal

skills" and "day-to-day management of business"; comments "could have impugned his professional reputation and negatively impacted" his efforts to "obtain[] new employment").

Even in the absence of persuasive precedent, moreover, the court should deny summary judgment. The evidence here, read in a light most favorable to the Plaintiff, shows that both Ms. Horn and Mr. Kulak interpreted the criticisms as affecting Mr. Levenson's capacity to function professionally. *See* discussions *supra* (Ms. Horn "would be doing a disservice to [her] client if [she] knowingly sent someone to their facility" who had demonstrated "[an] inability to remain professional under stressful circumstances," and Mr. Kulak "personally would not" hire such individual). And while Pennsylvania's standards regarding defamatory meaning are fairly exacting, this case is at best a close one, and the District Court should defer to the standards favoring submission to a jury. *See* discussion *supra* ("[i]f the court has any doubt that the communication is defamatory, then the issue must be given to the [factfinder]") (citation omitted).[6]

---

[6] Oxford may argue that, like her statement regarding intent, Ms. Horn's comments regarding the Plaintiff's professional conduct or character are non-actionable opinion. Statements addressing an individual's character, however, by necessity will reflect the speaker's opinions to at least some degree. If the doctrine of non-actionable opinion is read too broadly, it would completely eviscerate the "fitness for business, trade or profession" theory. This form of defamation is deeply rooted in the law, and it must be allowed to coexist with the prohibition against "opinion only" claims.

### 3.    **The Defendant's Assertion of Privilege**

Finally, the Defendant argues Ms. Horn's statements were privileged given Oxford's responsibility for serving Alcoa's human resource functions in filling the position.  *See* Def.'s Br. at 17-18.  Two types of defamation privilege exist, absolute and conditional.  "Absolute privileges are granted by statute," "to statements made by participants in any stage of judicial or legislative proceedings," "to high public officials acting within the scope of their duties," "to employers issuing evaluations, warning letters or terminations," "or by consent."  <u>Johnson v. Resources for Human Dev., Inc.</u>, 860 F. Supp. 218, 222 (E.D. Pa. 1994) (citations omitted).  Conditional privilege arises "when the communication involves an interest of the publisher, <u>the recipient</u>, a third party or the public."  *Id.* (citation omitted, emphasis added).

Oxford does not identify the type of privilege it claims applicable.  *See* Def.'s Br. at 17-18.  None of the recognized categories of absolute privilege apply, all of the cases cited by counsel address conditional privilege, and the latter protection seems an obvious fit.  *See, e.g.*, <u>Daywalt v. Montgomery Hosp.</u>, 573 A.2d 1116, 1118 (Pa. Super. 1990) ("publication is conditionally privileged if the [speaker] reasonably believes that the recipient <u>shares a common interest in the subject matter</u>

and is entitled to know") (citation omitted, emphasis added).[7]

For conditional privilege to apply, the communications must have been "made on a proper occasion, from a proper motive, in a proper manner, and . . . based []on reasonable cause." Moore v. Cobb-Nettleton, 889 A.2d 1262, 1268 (Pa. Super. 2005) (citations omitted). While all other indications in the record support these elements, the court cannot ignore Mr. Levenson's testimony that Ms. Horn told him "you're going to accept this contract or you're not going to work there, and I will see to it that you don't work [at Alcoa]." See Pl.'s Dep. Tr. at 165-66. On summary judgment, Mr. Levenson's testimony provides a reasonable inference that this statement was made out of frustration or spite, and therefore reflected improper motive.[8] Under the circumstances, Oxford is not entitled as a matter of

_____

[7]  Of the decisions cited by Oxford, the only one to address absolute privilege, Rutherfoord v. Presbyterian-University Hospital, did not make clear which it applied. See id., 612 A.2d 500, 507 (Pa. Super. 1992) ("[w]e agree that each alleged defamatory statement was conditionally, if not absolutely, privileged"). In referencing absolute privilege, however, the Rootherford Court cited the "absolute privilege in connection with communications concerning employment termination," id., a situation not presented here. Despite counsel's suggestion to the contrary, moreover, the related parties in Rootherford had a much closer relationship than Alcoa and the Defendant, as Oxford shared responsibilities with both the company and the potential employee Mr. Levenson. See generally Def.'s Br. at 17-18 (acknowledging that, prior to the parties' falling out, Oxford was also "representing Mr. Levenson").

[8]  It is unclear whether Mr. Horn's alleged statement meant that, pursuant to Oxford's agreement with Alcoa, the Plaintiff would not be employed in this instance; or whether she intended to "poison the well" for him into the future. See id. Again, this evidence is viewed in favor of the non-moving party and, in any event, a jury could find improper motive regarding the temporary position itself.

law to a finding of unassailable privilege.  *See* <u>American Future Sys., Inc. v. BBB of Eastern Pa.</u>, 923 A.2d 389, 393-94 (Pa. 2007) ("whether [conditional] privilege was abused [is] a factual question for the jury") (citation omitted).

**CONCLUSION**

From the discussions above, the undersigned thinks it fairly obvious that the Plaintiff does not present a strong case of defamation.  The Defendant nevertheless has failed to show its entitlement to summary judgment, and its Motion should be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by November 21, 2007.  Responses to objections are due by December 3, 2007.


November 5, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

Timothy P. O'Brien, Esq.
Walter P. DeForest, Esq.
Jacqueline A. Koscelnik, Esq.